May it please the Court, my name is Gary Lassen. I'm here for the appellants, the four remaining plaintiffs of 86 original, two of which had purchased their land directly from the original subdivider or developer. Were they purchasing the large parcel, like, just short of 36 acres? Most of the parcels here were 10 or 20 acres. There may have been, from the original purchasers, not my clients, some larger, who then turned around and sold the 5, 10, or 20 acre parcels. We have presented several arguments on appeal, and first of all, I would like to say the facts of this case are very complex, somewhat misleading, but I think the legal principles are pretty basic. And my task in taking this case over was to try to focus on those, and I would like to take this opportunity first to let you know my thoughts of what are the most compelling arguments and the least compelling. I need to state at first blush, my assessment of that priority differs from that of my clients. I think our weakest argument is our equal protection argument. That's the one they think is the strongest, because why do those people get to build houses and not us? Why is there this patchwork quilt? Well, I think there's something rotten in Phoenix, but that's not what this case in the main is about. I'm not conceding that argument. Well, isn't it still in the case? I don't recall that being the subject of the brief. In our opening brief, we talked about the irrationality, and to be honest, we think it goes more to substantive due process. It also, I think, undercuts their argument that there was an important public health and safety rationale, which we think the magistrate accepted without any consideration of the facts. The single development of the purely factual basis of what were the state's interests, and I use that term that I need to define a little more precisely here, was from the hearing officer or the administrative law judge, you said, who recommended suspension of the summary suspension order because he said there was no health and safety concern. That the so-called irregularity in the planned subdivision had nothing to do with public health and safety, but rather a mistake regarding the size of a couple of the originally subdivided parcels. Ironically, later, that was determined to be due to easements that were misinterpreted by a department of real estate individual. Well, let's go back and get straight. The original approval for the holding company was that they were going to be selling parcels that were either 36 acres or larger. Correct. And if they were going to be doing something which was lesser, they had to go through the subdivision process. Correct. So you are correct. They sold 36-acre parcels. That is correct. That's where you're supposed to start. Right. Now, it seems that they could the purchasers could still go through the subdivision process, could they not? When you say the purchasers, the Your plaintiffs, could they not go through the proper subdivision processes? Are you talking about could they go ahead and comply with the requirements of the subdivision? For a subdivision, yes. And the answer to that is no. And the answer to that is practically because they don't have $100 million. Because to subdivide under a subdivision, you have to show the water supply. These are people that bought this rural land at their own risk so they could build their ---- Well, I mean, that sort of defines the problem. They bought the rural land at their own risk. There's no question but that what they currently possess doesn't comply with the state law because it hasn't been subdivided. I have difficulty understanding why it is that's something the state should be precluded from enforcing. It's been in the books all along. It's not like the state's changed the law. The law is the law. Well, thank you, Your Honor, because you're focusing on what I think is about the most critical. This is the Arizona Department of Real Estate in Title 32. Their jurisdiction extends solely to developers and real estate agents. They have no statutory authority to extend that authority to the purchases of land. The remedy that the statute provides, and it's limited to the jurisdiction, extends only to the direct purchaser from the developer. These agencies of the state are of statutory creation. They're not constitutional entities with any whatsoever inherent authority. Now, the state land department is a different matter, but this isn't the state land department. The summary suspension order by its own terms states that this determination applies solely to RTD and its principles. Well, is the state itself actually preventing your clients from doing anything? Absolutely. There was no denial of the ability to get building permits until that summary suspension order was issued. That's part of the patchwork quilt problem. Now, who adopted that order? The director of the Arizona Department of Real Estate. Do they issue building permits? No, that's the county. Maricopa County does. Yes, they do. Maricopa County is the one that hasn't given you building permits. Yes. Why don't you sue them? Pardon me? Why don't you sue them? Because their position is simply we can't do it because the Department of Real Estate. They may be wrong in saying that, but they're the people who don't give you the building permit. You've sued the wrong person, haven't you? No. You want a building permit. You don't want a subdivision. Well, it's a lot more than a building permit, I would submit. It's the ability to use your land. Wait a minute. You're not stopped from selling the land. They've withdrawn the cease and desist. You can sell the land. Yes, for one-tenth of what you purchased before. Well, because you can't build on it. What you need is a building permit. Get one from Maricopa. Now, Maricopa may have been wrong in adopting the Department of Real Estate's determination that there had been a violation of the Subdivision Act, and therefore there could be no sales. Right? Maricopa has issued building permits to anyone who has a release now from the Department of Real Estate. Right. And your clients don't have a release. Not from Maricopa. Maricopa doesn't issue permits unless ADRA, excuse me, Department of Real Estate first releases. I see. So what you want is a specific injunction, mandatory injunction, that they release these parcels. Well, I think there's more than that. We have an unconstitutional procedural and substantive due process. There was never any jurisdiction over our part. They began a cease and desist. But there was never any valid subdivision. What right does your client have to proceed not in compliance with Arizona law with regard to subdivision? Because that's not an obligation imposed upon a remote purchaser of property. Because the jurisdiction of the Department of Real Estate extends only to sellers and developers of real estate. So if the original seller gets away with a misleading fraud, then everybody who buys from him is not subject to the Department of Real Estate, pursuant to your analysis, right? No. The person that buys from them is. They have a statutory right, a rescission. So you flip the property a couple times and you're home free. Yes. And Arizona has no ability to go back and say, now, wait a minute? Yes, they do. But not through the Department of Real Estate. There are issues there. I would submit the Arizona Land Department, the Arizona Department of Environmental Quality, the Department of Water Resources, and the county. And, very importantly, this does not apply to cities, towns, and municipalities. This is land. Are we within a city, town, or municipality? No, this is unincorporated. So it's not contested that it's unincorporated. It's not contested the State could enforce it, albeit perhaps a different department. It's not contested this parcel doesn't comply with the subdivision statute. The problem is, Your Honor, the intent is to buy property that's unsubdivided. And if you don't follow the procedure, as the Department of Real Estate says, it becomes an illegal subdivision, not unsubdivided 36-acre parcels. Why didn't your clients sue the title company? Or maybe they have. Some have. But the other point here, and, Your Honor, that's a superb question that I anticipate. And that is, this whole system throws the title system for providing clear title on its head. Because, ultimately, most of the people here have lost the land. Lenders and the title companies don't pick this up. This is a they say, well, you've had constructive notice. There is no duty to record this. This is a disclaimer hidden away in a file in the Office of the Department of Real Estate. Is the title company going to find that? It can't. These were clear titled after the summary suspension order, because by the very terms of that order, this applies only to RTD and its principles. It cannot be a clear title search. I think back, you know, in the middle of the night last night, I thought, you know, in western states we pretty much go with title companies. But I thought of the poor lawyers in the south where I went to law school in Texas that still do abstracted titles. You're going to ask a lawyer, when he's reviewing an abstract, to go through the Department of Real Estate files? Yes. Well, if I've got a plot that's too small and it doesn't appear to have been properly subdivided and the record doesn't show any subdivision, yeah, maybe I do. I mean, why shouldn't somebody be concerned about the ability to deal with that property if, in fact, it doesn't appear to have been properly subdivided and it's not large enough to be an independent, unsubdivided parcel? That's a legitimate question, and it comes back to is there procedural due process to people who are not subject to jurisdiction. We may not be here today had the Department of Real Estate not unilaterally withdrawn the only time that they had jurisdiction over my clients when I think they acknowledged that they didn't have jurisdiction to do what they intended to do. But if you tell me the State has authority, but perhaps through another department, it seems to me the air has gone out of the balloon. I mean, if the State can properly enforce the subdivision statute, why should we be   concerned? What's the Federal problem here? No. The State doesn't have the authority to enforce the subdivision statute. They may have other authority to enforce other laws. I apologize if I'm misled. But they have to act within the confines of their statutory and administrative regulations. This notion that somehow our clients are constructively noticed by something that happened to some other entities cannot afford them procedural due process. It's just fundamental constitutional law that their rights, their opportunity for a hearing at which time they wanted to come forward and prove how the State had ruined the value of their land. What they couldn't prove is that how their ownership of the land was in compliance with the subdivision statute. It wasn't their responsibility, Your Honor. They're trying to use the land as if it's properly subdivided. That's not their responsibility. And why not? That's what you say, but the State and the statutes would seem otherwise. The statutes, if you think about the statute that they're relying on, they're relying on the statute that the owner. We're talking about where it says the State can come in at some time in the future. It's our position here that that is unconstitutionally vague. Does that mean that the State could come in 10 years, 20 years later and say your land is not subject to being able to be developed? That's what the statute appears to, how it appears to read. It also is impermissible in that it extends jurisdiction over somebody, a property owner, over which the State Department of Real Estate that licensed professions. This is the body that licensed real estate agents and subdividers. Now, in many cases, we have, as I'm sure you're aware, many developers that continue that process for years and years and years. One of them is famous for developing retirement communities. It's the same entity that did it 70 years ago. This is different. These are individuals with a first and last name that are developing their own land. Thank you. Thank you. May it please the Court, my name is Daniel Pishak. I'm an assistant attorney general for the State of Arizona, and I represent the defendants at police. I wanted to make a couple of points and then rely on the briefing. The Court has hit on pretty much those points here, and let me reemphasize them because there's some confusion going on here. First of all, the title to the properties is not the issue. Their problem, the plaintiff's problem, is their expectation of development rights, their belief that they had the right to build single-family houses on these multiple parcels of lands that they purchased. And as the Court pointed out, it is not the State of Arizona who is impeding them. It is Maricopa County. And there is nothing in the statutes of Arizona, nothing in the record, and nothing in the letter from the Maricopa County attorney who explained why the county was not granting the permits that ties that automatically to the Department of Real Estate's decision. The Department of Real Estate ---- Kennedy, did Maricopa say the reason we're not giving you a building permit is because this wasn't properly subsidized land? I'm sorry, Your Honor. Yes, that is exactly the answer they gave, but they don't ---- And the plaintiffs say that was a determination that was made without notice to us, without us at the hearing, and we're not bound by that, by any concept of collateral estoppel or anything else. Two answers to that point, Your Honor. Number one, there is nothing that required Maricopa County to take that position. That was a decision of Maricopa County. As you pointed out, they are the immediate impediments to their development. So Maricopa County, hypothetically, was acting arbitrarily in an abuse of discretion and everything else in saying you're not getting a building permit. Your point is, sue Maricopa County. That would ---- yes. Yes, Your Honor. The second point on that, though, is that Mr. Lassen is exactly correct. Our jurisdiction, the Department of Real Estate's jurisdiction, extended not to owners of property until owners start to deal in property. The Department of Real Estate proceeded against RTD in its development of Greer Ranch when Greer Ranch ---- when the department determined that Greer Ranch was improperly developed and had gone from what RTD wished, which was an unsubdivided parcel, into a ---- and because of the mistakes that RTD made, it turned into a subdivided parcel, and because they hadn't complied with the subdivision laws, became an illegal parcel. That meant that the plaintiffs had purchased into an illegal subdivision, which meant that at the time they purchased, if their theory is correct that Maricopa County's position impedes them from development, then what they bought was a parcel that didn't have development rights. They have to have something for us to take something away from them if there's going to be a taking. So they're ---- Let me ask you this, Counsel. You lifted the cease and desist order as to certain properties and not theirs. Is there a rationale? The cease and desist order was lifted as to all the plaintiffs, Your Honor. That was ---- if you go and you look into the factual allegations, it appeared to the department that the plaintiffs were further subdividing the property in violation of the subdivision laws, and then it was lifted after, as to all of them once ---- I don't really recall. I mean, I don't ---- I'm not aware of why they stopped. Maybe it was because the plaintiffs weren't planning to do these further subdivisions. But the point is ---- But the point I'm wishing to make is, Counsel, opposing Counsel, incorrect that some of the parcels were released but not theirs? The ---- some of the plaintiffs have settled with the Department of Real Estate on appeal, and they have, through that settlement, had their ---- they've ---- I'm ---- These are not in the record. And unless the Court wants me to, I can talk in hypotheticals here. Well, let me just ask a question. Is there any cease and desist order against these plaintiffs at this time? There is not, Your Honor. The ---- all right. And the second point that arises partially from the fact ---- well, totally from the fact that the plaintiffs were not the subject of the Department of Real Estate's actions determines that they were not entitled to notice and an opportunity to be heard. It was RTD who had created the problems, and it was RTD that the Department of Real Estate was acting against. So, you know, there's no real ---- any effect on the plaintiff's parcels was secondary at best. And there is, since the Department was proceeding against RTD, there is no reason for us to have brought them into the action, and then ---- And ultimately, you brought them in, but you let them out. We brought them in on a different subject, Your Honor. The cease and desist order was because the department believed that they were doing further development or further subdividing. If you'll read the allegations of the cease and desist order. I have. The one real concern I have here is that you or your client argues in the brief about the plaintiff receiving actual notice when they were served with the cease and desist order. And the impression left there is that, well, there's notice, they have an opportunity to respond. But in fact, you're telling me the notice was on something else and they didn't really have an opportunity to respond because they were dropped promptly before there was ever a hearing. I believe the discussion of the fact that they received notice was to ---- was not that they were proper parties to be brought into the administrative proceedings, but more in lines of the fairness of the whole deal, that they knew that they were buying a pig and a poke, if you'll pardon the expression. Well, they knew it after they bought it. Some of them. Well, in terms of fairness, I'm not sure that speaks to the question very well. It's ---- it may be, I mean, let's get to the facts. They've been screwed somehow. Now, who they've been screwed by is a real question. And you have to suspect the real screwers here were the people that sold them the pig and the poke. But in their dealings with the State, it is true, it appears, that what notice they received was not notice that ever led them to an effective hearing of any kind because the notice was in the context of the cease and desist order from which they were dismissed. So has there been an opportunity for them to obtain a hearing or seek recourse within the State Department based on the situation they're facing? No, and for good reason, Your Honor. They have nothing to add to this. It was not their actions that created the illegal subdivision. It was not for them to answer to what RTD had done wrong in its unsubdivided lands report. And for their part, they have never said what they could have brought up in RTD's defense to show that it was not an illegal subdivision, as the Director eventually determined. As a matter of fact, they don't dispute that the original subdivision was illegal. I absolutely agree with that, Your Honor. Their cause of action should not be against the government that is acting to, we all know Arizona is very famous for nefarious land developers, and they have sued us for coming in and trying to take actions to protect the public. The statutes give them very specific remedies. For instance, at page 27 of my addendum, section 32-2183.03, civil remedies, says that the developer shall be liable as provided in this section to any person who acquires a lot or parcel in the subdivision, and goes on to give a statute of limitations. So you're saying they should turn to the people I've described as the screwers, that is, the people that push the property down the line, and not against the State? Absolutely, Your Honor. One last question that came up, and it was, my goodness, how long could the Department of Real Estate wait, and could we come in and find Sun City to have been an illegal subdivision? There is a statute of limitations. It's ARS section 32-2185.09C on page 37 of the addendum, and it gives the Department I believe it's either three or six years. I think it may be three years with reasonable diligence to find out anything. But, of course, that goes as to any problems that the developer created in its report and its notice of intent to sell. Could the plaintiffs currently sell their land? I am – I know of no reason why they couldn't. I don't believe they're going to get the price they thought they would, given their inability to develop and the crash in real estate prices. If there are no further questions, I will stand on the briefing. Apparently not. The case just argued is submitted. We will take a brief recess before we resume with the rest of the calendar.
judges: Fletcher B. , Clifton, Bea